4-6722 161 S. W. 2d 405

Opinion delivered May 4, 1942.

*Daily & Woods* and *R. S. Wilson,* for appellant.

*Batchelor & Batchelor* and *Hardin & Barton,* for appellee.

SMITH, J. O. W. Bohannon and his wife and daughter organized a canning business, which they incorporated in 1936 under the name of Bohannon Canning Company. The company's place of business was at No. 104 Cane Hill Street, in the city of Van Buren. About June 1, 1940, one E. L. Peterson came to Van Buren from Springfield, Missouri, where he had resided before coming to Van Buren. Bohannon and Peterson were friends and had had previous business relations.

On the last-mentioned date these parties entered into a "Contract for Sale of Canning Factory," the relevant portions of which read as follows:

"This contract and agreement, made and entered into on this 1st day of June, 1940, by and between Bohannon Canning Company, Inc., and O. W. Bohannon and Virginia Lee Bohannon of Van Buren, Arkansas, presi-

dent and secretary thereof, respectively, party of the first part, and E. L. Peterson of Springfield, Missouri, party of the second part, is as follows, to-wit, witnesseth:

". . . the party of the first part agrees to sell and does hereby bargain, sell, convey, transfer and deliver unto the party of the second part, . . . the following described personal property, to-wit: Certain canning factory consisting of equipment used for canning spinach (and other vegetables) now constituting the factory of the party of the first part located at 104 Cane Hill Street in the city of Van Buren, Arkansas, said property being more particularly described as follows: . . ." There then follows an enumeration of a large number of articles used in connection with the canning business.

It was recited that the consideration for the sale was the sum of $12,500 of which $2,000 was cash in hand paid, and that the party of the second part should take possession of the business on August 1, 1940, at which time $2,000 additional should be paid, and that the balance of $8,500 should be paid "on the basis of five cents per case on products packed in and about said factory by the party of the second part or for him until said remaining sum of $8,500 is paid in full, . . ." such payments to be made monthly.

It was further recited "that the party of the second part may use Bohannon Canning Company labels so long as he may desire, etc.," and that "Any canning supplies on hand on August 1, 1940, such as salt, empty cans, corrugated boxes (containers), stitching wire, glue or paste, labels, etc., shall be invoiced by the party of the first part to the party of the second part at f.o.b. Van Buren prices, same being the price already paid for such supplies, and to be paid for by the party of the second part as used, such payments to be made monthly as such supplies are so used, the terms on same to be net."

It was further provided that the balance of $8,500 should be evidenced by the note of the party of the second part and should be secured "with a chattel mortgage as security therefor on the above described factory equipment."

Peterson took charge of the plant and began to operate it, and it was alleged by him in the complaint which forms the basis of this suit that the contract carried with it the sale of the name and good-will of the Bohannon Canning Company, and that under this contract he acquired the right to the exclusive use of the name Bohannon in connection with the canning business and the Bohannon labels, and he alleged that Bohannon violated the contract by continuing the use of the name and of the labels placed upon the canned products, thereby causing confusion and damage to plaintiff, and that this conduct on Bohannon's part constituted an unfair business practice, and he prayed that the same be enjoined.

A demurrer to this complaint was overruled, after which an answer was filed joining issue on all the material allegations of the complaint. Much and very conflicting testimony was heard, after which the complaint was dismissed as being without equity, and from that decree is this appeal.

Peterson testified that Bohannon stated that he intended to retire from the canning business, and that at Bohannon's suggestion he reincorporated the business after taking charge of it, under the name of Bohannon Canning Company, Inc., but that instead of retiring from the business, as he had agreed, Bohannon filed an appropriate certificate with the Secretary of State changing the name of the Bohannon Canning Company to O. W. Bohannon, Inc.

It was alleged that this action constituted unfair competition, which should be enjoined, but the chief insistence is that Peterson bought the Bohannon Canning Company as a going concern and thereby acquired the good-will value of its name and the sole right to the use of that name on products canned.

It was shown that confusion resulted from the reincorporation and change of names and that mail and mail orders were on frequent occasions delivered to one corporation which were intended for the other.

Briefs of opposing counsel manifest extensive research, but apparently the case chiefly relied upon for the

reversal of the decree is our own case of *Terry* v. *Cooper*, 171 Ark. 722, 286 S. W. 806, 48 A. L. R. 1254. It was there held that the sale by one corporation to another of all of its assets of every kind and description included the trade-name as a part of the assets sold, and that an injunction would lie to restrain the use by the corporation (which had sold all its assets) of its former corporate tended to confusion and to enable such corporation or name, when the continued use of the corporate name firm to obtain, by reason of the similarity of names, the business of the purchasing corporation or firm.

We reaffirm that holding; but it does not apply here, for the reason that Bohannon did not sell all the assets of the Bohannon Canning Company, and certainly did not sell the good-will and corporate name of that company. This is conclusively shown by the fact that the mortgage given to secure the unpaid purchase money employed the same description of the property sold as was employed in the contract of sale, and the mortgage was given to the Bohannon Canning Company. Certainly Peterson did not intend to give a mortgage to a corporation which he had just purchased to secure the payment of a balance of purchase money for that corporation. To do so would be to give a mortgage to himself or to a corporation which he owned. Peterson did not operate as the Bohannon Canning Company, but reincorporated as the Bohannon Canning Company, Inc.

Moreover, the contract of sale did not recite that Peterson had purchased the good-will of the Bohannon Canning Company, nor did it recite that he had purchased all the assets of that corporation, as did the contract in the Terry case, *supra*. It did recite that Peterson had purchased a ''Certain canning factory consisting of equipment used for canning spinach (and other vegetables)'' located at 104 Cane Hill Street in the city of Van Buren, and the property purchased was there then ''more particularly described as follows:'' and there follows an enumeration of the property purchased, which did not include the good-will of the Bohannon Canning Company. Had Peterson purchased all the assets of the Bohannon Canning Company he would have acquired, as

part of its assets, its good-will and the right to use its name; but, as has been said, he did not do so. Peterson did not proceed to use the name of the Bohannon Canning Company, but reincorporated under the name of Bohannon Canning Company, Inc.

We are confirmed in the view that Peterson did not purchase the name and good-will of the Bohannon Canning Company by the testimony recited, and additional testimony to the following effect. The Bohannon Canning Company had on hand a large amount of property belonging to it which Peterson admittedly did not buy. It had from twelve to twenty thousand dollars worth of supplies, consisting of cans, labels, boxes, salt, etc., and had on hand $150,000 worth of canned merchandise, most of which was stored in the canning factory at 104 Cane Hill Street. Bohannon testified that it was understood and agreed that he should have the right to dispose of this property, and the contract did not attempt to restrict that right. It was stipulated in the contract that "It is further agreed and understood that the party of the second part may use Bohannon Canning Company labels so long as he may desire." This is a meaningless stipulation if Peterson had acquired the sole right to use these labels. The undisputed testimony is to the effect that the Bohannon Canning Company had on hand when the contract of sale was executed $6,000 worth of labels, and $150,000 worth of canned goods on which to use them.

Now, it was recited that Peterson might purchase these supplies at an agreed price, but the right to purchase these supplies was optional, and not obligatory, and he declined to purchase any of the cans. Peterson did purchase and pay for some of the labels, but Bohannon explained that it was agreed that Peterson should have this right "so long as he (Peterson) may desire," and the contract so provides, but that Peterson, whose initials are E. L., prepared a label of his own after Peterson got started, and that Peterson began to work out his own label, using the initials E. L. and the first four letters of his surname, making "Elpete" his label.

There was confusion, but the confusion appears to have largely arisen from Peterson's failure to use his own

labels and his permissive use of the labels of the Bohannon Canning Company. Bohannon explained that this permissive use was given for the reason that he wanted to assist Peterson to begin operations without extensive capital outlay. The men were friends and each sold the other his canned products, and Bohannon sold such of the supplies of the Bohannon Canning Company as Peterson cared to buy.

We think it clear, and we find the fact to be, that each of these parties intended to continue in business and that neither would operate as Bohannon Canning Company, and neither did so. Bohannon did use letterheads and billheads on hand on which the name Bohannon Canning Company was printed, but in each instance of such use he had crossed out the words "Canning Company" and with a red rubber stamp stamped the letters "O. W." before the name "Bohannon" and the abbreviation "Inc." after the name "Bohannon," so that the letterheads and billheads always read "O. W. Bohannon, Inc."

This, we think, under the facts recited, did not constitute a violation of any contractual or common-law right of Peterson, and the decree, dismissing the complaint of Peterson as being without equity, is affirmed.